UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORACE M. WILLIAMS,<br><br>                   Plaintiff,<br><br>vs.<br><br>WINFRED KOKOR M.D., *et al*,<br><br>                   Defendants. | Case No. 1:15-cv-00861-RRB<br><br>**<u>SECOND DISMISSAL ORDER</u>** |

Plaintiff Horace M. Williams, a state prisoner appearing *pro se* and *in forma pauperis*, filed an Amended Complaint under the Civil Rights Act, 28 U.S.C. § 1983, against various employees of the California Department of Corrections and Rehabilitation.[1] Williams is currently incarcerated at the California Substance Abuse Treatment Facility ("SATF"), Corcoran, California, where the acts underlying this action occurred.

## I.    SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2]  The Court having set forth the screening standards in dismissing the original Complaint, they are not repeated herein.

---

[1]  In addition to Winfred Kokor, M.D., Williams names as defendants:  C. Nyenke, M.D.; Goodwin Ugwueze, M.D.; C. Nyenke, M.D.; Rosenblatt, M.D.; Clement Ogbuehi, P.A.; Whiting, R.N.; L. Merritt, N.P.; and Powell, R.N.

[2]  28 U.S.C. § 1915A(a).

## II.    GRAVAMEN OF COMPLAINT

It appears from the Complaint that, at a result of prior surgery, Williams suffers from back problems at levels C5–C6 and is wheelchair bound. In his Amended Complaint Williams alleges deliberate medical indifference and retaliation claims against the Defendants while incarcerated at SATF during the period beginning in March 2010 extending to some point after August 2012 when Williams was transferred to Pleasant Valley State Prison.  Williams was transferred back to SATF in August 2013 where he was housed through the date the Complaint was filed. Although pleaded as a single claim and difficult to follow, the Amended Complaint appears to plead several separate claims.

First Claim. Dr. Nyenke and RN Powell refused to timely schedule Williams for a new arrival appointment or renew Williams medications as a result of which Williams was without his medication for a period of 27 days. It does not appear from the record that Williams exhausted this claim. Furthermore, it appears more likely than not that the acts complained of occurred prior to June 1, 2010, and are barred by the limitations period.[3]

Second Claim. Dr. Ugweeze failed to provide proper oversight of facility medical personnel.

Third Claim. During the period March through July 2011 the medication prescribed by Dr. Nyenke (Naproxen) did not alleviate Williams' pain and Dr. Nyenke refused to renew Williams' prescription for Hydroxyzine. Williams further alleges that Dr. Nyenke refused to

---

[3]  *See* Cal. Civ. Proc. Code §§ 335.1, 352.1(a) (providing a two-year statute of limitations for personal injury claims, which may be tolled for an additional two years for prisoners).

follow the recommendation of one outside physician that surgery was necessary on his lumbar area and another outside physician that Williams receive an epidural.

Fourth Claim. Appears to allege that in December 2011 RN Merritt deprived Williams of appropriate pain medication ostensibly to intimidate Williams from filing his medical care complaints.

Fifth Claim. In or about December 2011 Williams was again examined by an outside neurosurgeon who recommended a different pain medication. Williams alleges that Dr. Nyenke, Dr. Ugwueeze, and RN Merritt deliberately ignored this recommendation in retaliation for Williams having exercised his First Amendment right to petition for redress of his grievances.

Sixth Claim. Alleges that, although Williams was suffering serious side effects from its use, PA Ogbuehi refused to discontinue a prescription for Methadone in retaliation for the complaints Williams had filed against PA Ogbuehi's co-workers.

Seventh Claim. In March 2012 Dr. Rosenblatt indifferently ignored Williams' requests that Gabapentin be dispensed resulting in Williams suffering extreme pain for a period of 19 days.

Eighth Claim. Although somewhat unclear, this claim involves an incident on September 9, 2013, where Williams fell while transferring from his wheelchair to the toilet injuring his lower back, tail-bone, and back of his head. He claims that during the period from the time of his accident through September 25, 2013, RN Powell deliberately delayed providing Williams appropriate treatment for his injuries.

Ninth Claim. This claim, spanning the period January through February 2015, alleges that, although Dr. Kokor approved that Williams be issued an egg crate mattress and cervical pillow, RN Whiting deliberately prolonged or failed to order those items.

Williams seeks declaratory and injunctive relief, and compensatory and punitive damages in various amounts from each of the Defendants.

## III.   ADMINISTRATIVE APPEALS

Attached as exhibits to the First Amended Complaint are ten administrative appeals processed at SATF in each of which Williams was denied relief. To the extent relevant to the issues presented by the Amended Complaint the holdings are summarized below.

SATF-33-11-11351 (November 21, 2011). Brought against Dr. Nyenke for neglecting to renew hydroxyzine and artificial tears and continued dispensation of naproxen.

**INSTITUTION DECISION:**
The Second Level Response (SLR) stated your appeal was partially granted indicating:
- On March 12, 201 l, you were sent to an outside facility for evaluation of chest pain and to rule out acute coronary syndrome (ACS), you were discharged the next day and returned to California Substance Abuse Treatment Facility (SATF);
- Discharge notes indicated your angiogram was within normal limits and your cardiac troponin levels were negative;
- On March 15, 2011, you were seen and examined by your Primary Care Provider (PCP), your plan of care was developed and reviewed with you and you were prescribed Tylenol and naproxen;
- There was no indication that you informed the PCP that taking naproxen caused you to experience chest pain nor was there record of a Health Care Services Request Forms (CDC 7362) to inform staff of this problem;
- On March 29, 2011, you were see for your follow up appointment with the PCP, you did not indicate chest pains from naproxen;
- On May 23, 2011, you submitted a CDC 7362, stating you were experiencing severe back, neck, shoulder and arm pain, an ear

infection, you requested hydroxyzine, nunisolide and eye drops, and that you needed alternate pain medication because naproxen gave you chest pain (first document in your unit health record [UHR]);

- On May 25, 2011, you were seen by the Registered Nurse (RN), who contacted the PCP and obtained an order for hydroxyzine, and artificial tears;
- On May 30,2011, your naproxen was discontinued; and
- During your interview your neck, arms, and legs were assessed and you agreed there were no significant findings that would warrant photos for these areas.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**

At the Director's Level of Review (DLR), submitted on August 14, 2011, you restate your issues and concerns as noted above.

At the DLR, your appeal file and documents obtained from your UHR were reviewed and revealed the following:

- It was determined your care related to your appeal issues was adequate, as you received medical treatment, medication was provided and your concerns were appropriately addressed at the FLR and SLR;
- For your request to be ordered pain medication, hydroxyzine, and artificial tears, according to your medication profile you are prescribed the following medications, amlopipine, aspirin, cetirizine HCL, nunisolide spray, gabapentin, hydroxyzine, lisinopril, salsalate as prescribed by your PCP;
- For your request to discontinue naproxen, this medication was discontinued on May 30, 2011; and
- For your request to have photos been taken of your neck, arms, back, and legs, during your assessment with your PCP you agreed there were no significant findings that would warrant photos for these areas. Please be advised medications are prescribed on the basis of your current medical needs. However, it is your responsibility to communicate with the doctor regarding the effect of the pain medication prescribed. If you feel the medication is not effective or is giving you side effects, you are encouraged to submit a CDCR 7362 to discuss the medication with your PCP.[4]

---

[4] Docket 24, pp. 31–32.

SATF SC 11001200 (July 9, 2012). Staff Complaint brought against Dr. Nyenke, NP Merrit, RN Powell, and LVN Gonzales for allegedly collaborating and conspiring to retaliate for submitting the appeal against Dr. Nyenke.

## INSTITUTION'S DECISION:

The institution partially granted your appeal indicating your appeal was processed as a staff complaint wherein a Confidential Inquiry was completed. Your allegations were related as stated in your appeal document. You were interviewed on February 13, 2012, by Chief Physician and Surgeon Ugwueze and were advised your health care issues would not be addressed in this appeal, but were split with appeal number SATF HC 11053921. A confidential inquiry was conducted and LVN Gonzales, RN Powell, NP Merrit and Dr. Nyenke were interviewed. Conclusions indicated there was no violation of California Department of Corrections and Rehabilitation (CDCR) policy.

## BASIS FOR DIRECTOR'S LEVEL DECISION:

Your appeal was deemed a staff complaint by the institution's hiring authority. The Director's Level Examiner reviewed the Confidential Inquiry, supporting documents and your appeal documents. Complaints against staff are taken seriously and al l efforts are made to ensure these matters are thoroughly researched and responded to in accordance with governing laws, rules and policies. Any report generated or action taken regarding a staff complaint is confidential. As such, no matters related to staff shall be shared with other staff, inmates or the public.

Your complaint was referred for a Staff Complaint Inquiry. The supervisor's inquiry into the matter concluded staff did not violate CDCR policy. Review of the inquiry documents and all supporting documents demonstrated you were interviewed on February 13, 2012, Dr. Nyenke was interviewed on January 13, 2012, NP Merritt was interviewed on January 4, 2012, RN Powell was interviewed on January 4, 2012, and LVN Gonzales was interviewed on January 20, 2012. Your Electronic Unified Health Record was reviewed. The content of the inquiry supported the conclusions determined. You were informed in your interview with Dr. Ugwueze that your health care requests would not be addressed in this appeal as this appeal is a staff complaint. The first initial of R.N. Powell is "K" and of LVN Gonzales is "L." It is noted you added additional issues at the Director's Level of Review, specifically your allegation that Dr. Nyenke and NP Merritt conspired to change your pain medications as part of their function in the Pain

Management Committee. These issues will not be addressed, as you have not provided evidence that you attempted to address these issues at the institution, per the California Code of Regulations (CCR), Title 15, Section 3084.2.[5]

SATF HC 12054498 (November 5, 2012). Staff Complaint against the pharmacy supervisor alleging that the auto refill for Williams' gabapentin prescription was not refilled.

**INSTITUTION DECISION:**
The institution's response stated your appeal was partially granted and indicated the following:
- You were provided the pharmacy supervisor's name at the First Level of Review.
- Due to an administrative error, the auto refill of gabapentin was not "turned on." The error was corrected and your prescription for gabapentin was renewed and issued to you starting on March 12, 2012.
- Monetary compensation was beyond the scope of the appeals process.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
At the Director's Level of Review (DLR), received on July 16, 2012, you restate your issues and concerns as noted above.

At the DLR, your appeal file and documents obtained from your Unit Health Record (UHR) were reviewed by licensed clinical staff and revealed the following:

Documentation is supportive of you receiving ongoing Primary Care Provider (PCP) evaluation and treatment to October 31, 2012, as determined medically indicated for chronic neck/back pain including historical and current order for pain medications including gabapentin. As described in the institution's response, you were provided the name of the pharmacy supervisor, and the March 2012, Medication Administration Record shows gabapentin was resumed on March 12, 2012. Institution staff acknowledged an administrative error caused the lapse and the error was corrected.[6]

---

[5]  Docket 24, pp. 38–39.

[6]  Docket 24, pp. 46–47.

<u>SATF HC 12054962 (November 15, 2012)</u>. Alleges that PA Ogbuehi misrepresented

himself as a medical doctor and made misrepresentations in the medical report.

**INSTITUTION DECISION:**
The institution's response stated your appeal was partially granted and indicated the following:
- There was no medical indication for you to meet with Dr. Uguweze.
- Your case was reviewed by the Pain Management Committee, Medical Authorization Review (MAR) Committee, who recommended and prescribed medication appropriate for your needs; however, your continued refusal to take the medications prescribed to you resulted in this medication being stopped.
- You continued to receive the medications gabapentin and baclofen.
- Notes of March 15, 2012, reflected the PA's assessment.
- You were seen and examined regularly by licensed professionals in accordance with policy and procedure.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
At the Director's Level of Review (DLR), received on July 30, 2012, you restate your issues and concerns as noted above.

At the DLR, your appeal file and documents obtained from your Unit Health Record (UHR) were reviewed by licensed clinical staff and revealed the following:

Documentation is supportive of you receiving ongoing Primary Care Provider (PCP) evaluation and treatment to October 31, 2012, as determined medically indicated for chronic neck/back pain including MAR Committee evaluation concerning pain management in April 2012, and active orders for the medications amitriptyline, baclofen, gabapentin, and tramadol. While you may refuse care, you may not be selective in the choice of providers. Provider assignments are determined by health care management based on the institution's needs.

Although you have the right to submit an appeal as a staff complaint, it is not in the purview of the inmates to request specific disciplinary action against personnel and any action taken by the Department is confidential. As such, no matters related to personnel shall be shared with inmates or the public. It should be noted your appeal was reviewed and evaluated by the Hiring Authority and the issue was deemed not to meet staff complaint criteria.

Treatment is provided based on your current medical needs and the judgment of your current provider, not on the basis of previous orders of other medical facilities or staff, in accordance with departmental policy and procedures. The professional judgment of your current provider is not rendered as inadequate medical care or deliberate indifference just because another provider may have had a different opinion.

The Inmate Medical Services Policy and Procedures state it is the policy of California Department of Corrections (CDCR) California Correctional Prison Health Care Services (CCHCS) to integrate Physician Assistants (PA-Cs) and Nurse Practitioners (FNPs) into the health care delivery system as PCPs. Authority for the use of PA-Cs and FNPs is derived from Business and Professions Code Chapter 7.7, Article 1, Sections 3500-3503.5, for PA-Cs, and from Business and Professions Code, Nursing Practice Act, Section 2725 (b)(4) for FNPs.  While you have a right to refuse treatment, you do not have the right to choose the type, specialty, or credential of your provider. Provider assignments are made by institution health care management based upon institution needs.

* * * *

The Department shall provide only medical services for patient-inmates that are based on medical necessity and supported by outcome data as effective medical care. In the absence of available outcome data for a specific case, treatment will be based on the judgment of the physician that the treatment is considered effective for the purpose and is supported by diagnostic information and consultations with appropriate specialists. Your contention that you have not received adequate medical care is refuted by professional health care staff familiar with your medical history, as well as a review of your medical records.[7]

SATF HC 13058187 (April 1, 2014). Requested to see an MD immediately, receive a CAT scan or MRI, stop gross delays in medical treatment, and be processed as an emergency. This complaint appears to be directed against RN Powell.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
Your appeal file and documents obtained from your Unit Health Record were reviewed. These records indicate:
- You have a history of chronic cervical lumbar spine condition prior to your fall in September of 2013; you have received post fall evaluation

---

[7] Docket 24, pp. 51–52.

including nurse and provider evaluations, acute hospital evaluation with findings including right hip traumatic bruise; CT scan revealed no acute fracture of your right hip.

• Furthermore, you have received provider follow up evaluation including medically indicated accommodation, analgesics/muscle relaxant and referral for neurosurgery consultation related to your spine condition that existed prior to the September 2013 fall incident.

• Names of medical staff that treated you in the rrA on September 15, 2013, were provided to you in the Second Level Response.

Per the Inmate Medical Services Policies and Procedures (IMSP&P), Volume 4, Chapter 4, the California Department of Corrections and Rehabilitation (CDCR) health care staff shall provide inmate-patients access to primary health care services. California Correctional Health Care Services (CCHCS) makes every effort to ensure that patient-inmates receive quality medical care; however, in some cases an appointment will need to be delayed. Physician requests to cancel clinic sessions or individual medical appointments shall only be canceled with the approval of the Health Care Manager (HCM) or Chief Medical Officer (CMO). As noted in the institution's response, there are procedures in place to address canceled or rescheduled appointments.

You indicated your appeal warranted emergency consideration. Following a review of the appeal issue(s), your appeal was found not to have met emergency criteria as described in the California Code of Regulations (CCR), Title 15, Section 3084.9(a)(I). Therefore, your appeal was processed as a routine matter.

While the health care administrative appeals process is an important means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your medical care providers. You are encouraged to continue your care with your assigned medical care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your medical care providers to offer and provide only the care they determine to be currently medically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other medical facilities or staff, input from medical consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current medical care providers.

It is noted you have added a new issue and/or request to your appeal at the Director's Level of Review (DLR), *"Dr. Jackson never reviewed my chart*

*regarding neurosurgery. They have refused to give recommended treatment and refused to let me see the neurosurgeon. I am still left to suffer.  I plan to file suit.*" It is not  appropriate to expand the appeal beyond the initial problem and or requests. This issue will not he addressed, as you have not provided evidence you attempted to address it at the lower level, per the California Code of Regulations (CCR), Title 15, Section 3084.l(b).

After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary.[8]

<u>SATF HC 14058949 (July 24, 2014)</u>.  Alleges retaliation by PA Oguehi for the filing of appeals cease and desist by refusing to allow Williams to be seen by a doctor, referring him to a neurologist, and to increase his pain medication.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:
•       Your requests to be seen by a doctor, referred to a neurologist and an increase in your pain medication are being addressed in appeal SATF HC 14058945.

The Department takes your complaint against any personnel seriously and all efforts are made to ensure these matters are thoroughly researched and responded to accordingly. However, it is not in the purview of the inmates to request specific disciplinary action against personnel and any action taken by the Department is confidential. As such, no matters related to personnel shall be shared with inmates or the public.  It should be noted the appeal was reviewed and evaluated by the hiring authority and the issue was deemed not to meet staff complaint criteria.
                            *  *  *  *
While the health care administrative appeals process is an important means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your medical care providers. You are encouraged to continue your care with your assigned medical care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your medical care providers to offer and provide only the care they

---

[8]  Docket 24, pp. 57–58.

determine to be currently medically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other medical facilities or staff, input from medical consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current medical care providers.

After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you arc receiving treatment deemed medically necessary.[9]

SATF HC 14058945 (July 24, 2014).  A retaliation claim against RN Powell, and

requesting an order to cease and desist.

### BASIS FOR DIRECTOR'S LEVEL DECISION:
Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:
- You are receiving ongoing evaluation and treatment as determined to be medically indicated by your providers, to July 11, 2014, and you are being monitored in the chronic care program.
- Your current *CDC 7410. Comprehensive Accommodation Chrono,* dated October 31, 2013, authorizes you barrier free/wheelchair access, ground floor cell, bottom bunk, wrist brace, back brace, manual wheelchair, hearing aids, wheelchair cushion, wheelchair gloves, extra mattress, wedge, pillow, wheelchair accessible table, transport vehicle with lift, daily shower and work restrictions.
- On April 4, 2014, you were seen for a neurosurgical consult via telemedicine, where treatment recommendations were made.
- On April 10, 2014, you were seen by your Primary Care Provider (PCP) for follow up, your treatment plan was discussed, your medications were reviewed, and referrals for Physical Therapy (PT) and an epidural injection were submitted.  Your PCP noted that there was no medical indication of neuropathy and you would need to be tapered off of gabapentin.
- On May 29, 2014, a non-formulary request was approved for tramadol for chronic low back pain.
- On June 10, 2014, you were seen by your PCP for follow up, where your medication was reviewed and your treatment plan was discussed.  Your PCP noted he would start you on Trileptal, your PT

---

[9] Docket 24, pp. 62–63.

SECOND DISMISSAL ORDER
*Williams v. Kokor*, 1:15-cv-00861-RRB – 12

and epidural injections had to be cancelled and rescheduled, due to non compliance with the pre-operative procedures.

- On June 12, 2014, you were seen and evaluated for PT, where treatment recommendations were made.
- On June 18, 2014, your PT was completed; you were advised of strengthening exercises lo perform on your own time.
- On July 11, 2014, you were seen by your PCP, for follow up and review of your chronic conditions; Trileptal was discontinued per your request and your PCP submitted a referral for a Magnetic Resonance Imaging (MRI) of your cervical spine, this referral is pending.
- Your pharmacy profile indicates active orders for amitriptylinc, baclofen, and tramadol for pain management as of July 18, 2014.

Effective May 9, 2011, all prescriptions for gabapentin require non-formulary approval and are restricted to adjunctive therapy for partial complex seizures, post herpetic neuralgia, and objective evidence of severe disease. Per policy, you do not meet the criteria for non-formulary use of gabapentin.[10]

<u>SATF HC 14058947 (July 24, 2014)</u>.  Staff Complaint PA Oguehi alleging retaliation

and seeking a cease and desist order, to be seen by Dr. Jackson, referral to a neurologist,

and an increase in pain medication.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:

- Your requests to be referred lo a neurologist and an increase in your pain medication are being addressed in appeal SATF HC 14058945.
- While you may refuse care, you may not be selective in the choice of providers. Provider assignments are determined by health care management based on the institution's needs.

The Department takes your complaint against any personnel seriously and all efforts are made lo ensure these matters arc thoroughly researched and responded to accordingly. However, it is not in the purview of the inmates to request specific disciplinary action against personnel and any action taken by the Department is confidential. As such, no matters related to personnel shall be shared with inmates or the public. It should b e noted the appeal was

---

[10]  Docket 24, pp. 67–68.

reviewed and evaluated by the hiring authority and the issue was deemed not to meet staff complaint criteria.[11]

SATF HC 14059867 (December 30, 2014). A staff Complaint against Dr. Kokor requesting reinstatement of gabapentin and that trileptal be discontinued; and that Williams be given a face-to-face consultation with a neurologist instead of by telemedicine.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:

- You are receiving ongoing evaluation and treatment as determined to be medically indicated by your providers, to December 10, 2014, and you are being monitored in the chronic care program.
- As stated in the Second Level response, on July 11, 2014, your prescription for oxcarbazepine was discontinued.
- On October 3, 2014, you received lumbar spine fusion surgery.
- On October 8, 2014, you were seen by your Primary Care Provider (PCP) for follow up, where your PCP advised you to continue physical therapy, and to continue your pain medication as prescribed.
- On October 8, 9, 10, 13, 20, and 28, 2014, you were seen by physical therapy; you were discharged from physical therapy on October 28, 2014, at your request.
- On October 9, 10, and 12, 2014, you were seen by your PCP for follow up, where your treatment plan was discussed and your medications were reviewed.
- On October 13, 2014, documentation indicates you refused to have your staples removed.
- On October 14, 2014, you were seen by your PCP for follow up, where your staples were removed and you were advised you would be transferred to the yard when a bed is available.
- On October 16, 2014, you received x-rays of your lumbar spine.
- On October 20, 2014, you were seen by your PCP for follow up, where your x-rays and pain medications were reviewed and discussed.  Your PCP noted your wound had completely healed, and you were advised of the goals of pain management. Your PCP advised you to continue with physical therapy and pain medications.
- On November 5, 2014, your case was reviewed by the pain management committee, where it was recommended to continue pain

---

[11] Docket 24, p. 73.

medications as prescribed, follow up with the neurosurgeon, and encourage you to ambulate.

- On November 24, 2014, you were seen by neurosurgery for follow up, where it was recommended to continue using the lumbar brace, referral to orthotics for a right foot drop, continue physical therapy, and follow up with neurosurgery in three months.

- On November 26, 2014, you were seen by your PCP for follow up, where the neurosurgeon's recommendations were reviewed and discussed with you. It was noted you did not want to go back to physical therapy and you are doing the exercises on your own. Your PCP submitted referrals to orthotics and neurosurgery.

- On December 4, 2014, your case was reviewed by the pain management committee, where it was recommended to start methadone, tapper off morphine and Lyrica; then start on gabapentin and increase Elavil. You may also need to be tapered off baclofen.

- On December 10, 2014, you were seen by your PCP for follow up, where your medications were reviewed and your treatment plan was discussed.

- Your pharmacy profile indicates active orders for acetaminophen, amitriptyline, morphine and Lyrica for pain management as of December 29, 2014.

- An orthotics consult and neurosurgery follow up are to be scheduled prior to February 24, 2015.

- If you believe your condition has changed and further evaluation is needed prior to your follow up appointment you are advised to submit a *CDCR 7362, Health Care Services Request Form,* to your facility clinic to further discuss this issue with your PCP.

You are considered an active partner and participant in the health care delivery system. You are encouraged to cooperate with your clinicians in order to receive the proper care and management of your condition. You will continue to be evaluated and treatment will be provided based on your clinician's evaluation, diagnosis, and recommended treatment plan, in accordance with appropriate policies and procedures.

\* \* \* \*

While the health care administrative appeals process is an important means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your medical care providers. You are encouraged to continue your care with your assigned medical care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your medical care providers to offer and provide only the care they determine to be currently medically necessary for you, in accordance with

appropriate policies and procedures. Previous orders from other medical facilities or staff, input from medical consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current medical care providers.[12]

SATF HC 15061160 (June 10, 2015). A retaliation complaint against Dr. Kokor for failing to include a wedge pillow and extra mattress on an equipment request, and RN Whiting for failing to timely provide the wedge pillow, egg crate mattress, cervical pillow, and extra mattress.

**BASIS FOR DIRECTOR'S LEVEL DECISION:**
Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff.  These records indicate:

- You continue to be evaluated and monitored by health care providers regarding your pain conditions to June 8, 2015; including review and adjustment of your current pain medications.
- California Correctional Health Care Services shall provide Durable Medical Equipment (DME) and medical supplies to California Department of Corrections and Rehabilitation patient-inmates as medically necessary to ensure equal access to prison services, programs, or activities. The DME policy was developed lo standardize all aspects of prescribing, ordering, distribution, and management of DME to ensure the DME needs of the patient-inmate arc met while maintaining institution safety and security by working with and advising custody staff.
- The DME policy specifics that certain miscellaneous supplies or property, such as blankets, extra state issued mattresses, egg crate mattresses (foam pads), extra pillows, shower chairs, clothing (boxer shorts, brassieres, shoes, and hats) shall not be considered medical supplies or DME and are not prescribed by health care staff.
- If you believe your condition has changed and further evaluation is needed prior to your follow up appointment you are advised to submit a *CDCR 7362, Health Care Services Request Form,* to your facility clinic to further discuss this issue with your primary care provider.

You have the right to be treated respectfully, impartially, and fairly by all employees. If you should have evidence to support your claim of retaliation

---

[12]  Docket 24, pp. 79–81.

SECOND DISMISSAL ORDER
*Williams v. Kokor*, 1:15-cv-00861-RRB – 16

by health care staff you should bring this to the attention of the Chief Medical Executive al your institution.

While the health care administrative appeals process is an important means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your medical care providers. You are encouraged to continue your care with your assigned medical care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your medical care providers to offer and provide only the care they determine to be currently medically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other medical facilities or staff, input from medical consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current medical care providers.[13]

## IV.   DISCUSSION

As presently constituted, Williams Amended Complaint is deficient several respects.

It appears that Dr. Ugwueeze is  being sued solely in his supervisory capacity.

Section 1983, standing alone, does not support vicarious liability - a plaintiff must

demonstrate that each defendant personally participated in the deprivation of his or her

rights.[14] On the other hand, however "[i]f state law imposes liability upon a public official for

---

[13]  Docket 24, pp. 87–88.

[14]  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see Monell v. Dep't of Soc. Svcs. of N. Y. City*, 436 U.S. 658, 691–95 (1978) (rejecting the concept of *respondeat superior* in the context of § 1983, instead requiring individual liability for the violation); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." (Citations omitted)).

the acts of his subordinates, vicarious liability can be imposed on him under section 1983."[15]

To impose liability on a supervisor, the supervisor's wrongful conduct must be sufficiently causally connected to the constitutional violation.[16] That is, the official must "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[17]

> A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978) (*Johnson*) (emphasis added). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. [Citations omitted.][18]

Williams' claims against Dr. Ugwueeze fall far short of meeting the requirements for supervisor liability. To the extent that Williams attempts to include Dr. Ugwueeze in several of the claims, Williams simply alleges that Dr. Ugwueeze is somehow responsible in purely conclusory terms without specifying how or the extent to which Dr. Ugwueeze was somehow directly involved. In addition, even if Dr. Ugwueeze were directly involved, any

---

[15]   *Johnson v. Duffy*, 588 F.3d 740, 744 (9th Cir. 1978).

[16]   *See Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (*abrogated in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)).

[17]   *Id.* (internal quotation marks and citations omitted).

[18]   *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoted with approval in *Tennison v. City and County of San Francisco*., 570 F.3d 1078, 1096 (9th Cir. 2009)).

claim against him would fail for the same reasons as those claims against the other Defendants fail as discussed further below.

The Supreme Court, holding that the infliction of unnecessary suffering on prisoners violated the Eighth Amendment, stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.[19]

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce] in diagnosing or treating a medical condition," holding that only the former violates the Constitution.[20] In short, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."[21]

In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect.[22] The Ninth Circuit has spoken to the subject of the appropriate test under *Estelle*:

---

[19] *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks and citations omitted).

[20] *Id.* at 106.

[21] *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

[22] *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong - defendant's response to the need was deliberately indifferent - is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an isolated exception to the defendant's overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.[23]

A defendant must purposely ignore or fail to respond to a prisoner's pain or medical need in order for deliberate indifference to be established.  Where the claim is based upon delay in providing a specified treatment, a prisoner has no claim for deliberate medical indifference unless the delay was harmful.[24]

The problem with Williams' Complaint as presently constituted is that it names practically every medical professional with whom Williams came into contact or was otherwise somehow involved in providing heath care during his incarceration at SATF. As to at least three of the Defendants, RN Powell, NP Merritt, and RN Whiting, the allegations do not come close to meeting the high threshold required for a deliberate indifference

---

[23] *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations omitted).

[24] *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

claim. As to Drs. Nyenke, Ugwueeze, and Rosenblatt,  Williams' allegations show nothing more than either his disagreement with the course of treatment or a difference of opinion among medical professionals as to the appropriate course of treatment. While this might rise to the level of medical malpractice, as noted above, it is insufficient to establish a deliberate indifference under the Eighth Amendment warranting the granting relief by a federal court.

To the extent that Williams alleges that a Defendant acted in retaliation for the filing of internal grievances the allegations are not only made in mere conclusory terms, but are based upon nothing more than supposition and conjecture. The Ninth Circuit has defined the parameters of a retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.[25]

The Ninth Circuit has "also noted that a plaintiff who fails to allege a chilling effect may still state a claim if he has suffered some harm."[26] A prisoner must show some causal connection between the action taken by the state actor and the prisoner's protected conduct. That is, "[t]o prevail on a retaliation claim, a plaintiff must show that his protected

---

[25]   *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

[26]   *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 568 n. 11).

conduct was the substantial or motivating factor behind the defendant's conduct."[27] In this case the allegations of the Complaint clearly show that the acts of the Defendants had no "chilling effect" on Williams exercise of his First Amendment right of seeking redress. Williams has not pleaded a viable retaliation claim.

To the extent that Williams attempts to raise a conspiracy claim it also fails. The elements of a conspiracy are twofold:  (1) an agreement or meeting of the minds to violate constitutional rights; and (2) an actual deprivation of those rights.[28] Williams' vague and conclusory allegations of a conspiracy are patently insufficient on their face.[29] In addition, as noted above, Williams has failed to plead a viable claim that his Constitutional rights were violated. Even if there were an agreement among the Defendants to do the acts of which Williams complains, they did not constitute a deprivation of any cognizable Constitutional right.

## V.   CONCLUSION/ORDER

Ordinarily the Court would grant Williams leave to amend his complaint; however, "when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad."[30] In this case it is patently

---

[27] *Id.* at 1271 (internal quotation marks and citation omitted).

[28] *See Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)).

[29] *See Simmons v. Sacramento Cty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (holding that conclusory allegations are insufficient to state a claim of conspiracy); *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) (same)

[30] *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citation and
(continued...)

evident from the Amended Complaint and the documents attached thereto that Williams cannot truthfully plead a plausible Constitutional violation claim against any Defendant. Thus, any further attempt to amend would be futile.[31]

Accordingly, the Amended Complaint is hereby **DISMISSED** in its entirety without leave to amend.

The Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Accordingly, any appeal would be frivolous or taken in bad faith.[32] Therefore, Williams' *in forma pauperis* status is hereby **REVOKED**.

The Clerk of the Court is directed to enter final judgment accordingly.

**IT IS SO ORDERED** this 13th day of July, 2016.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[30](...continued)
internal quotation marks omitted).

[31] *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (explaining that leave to amend should be given unless amendment would be futile).

[32] 28 U.S.C. § 1915(a)(3);  *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002) (revocation of *in forma pauperis* status is appropriate if the appeal is frivolous).